Slip. Op. No. 23-191

**UNITED STATES COURT OF INTERNATIONAL TRADE**

NAVNEET EDUCATION LTD.

   *Plaintiff,*

v.

UNITED STATES,

   *Defendant,*

*and*

ASSOCIATION OF AMERICAN
SCHOOL PAPER SUPPLIERS,

   *Defendant-Intervenor.*

Before: Stephen Alexander Vaden,
Judge

Court No. 1:22-cv-00132

<u>**OPINION**</u>

[Denying Plaintiff's Motion for Judgment on the Agency Record.]

Dated:  December 29, 2023

*Irene Huei-min Chen*, Chen Law Group LLC, of Rockville, MD, for Plaintiff Navneet Education Ltd.  With her on the brief was *Mark Burton Lehnardt*, Law Offices of David L. Simon, PLLC, of Washington, DC.

*Antonia Ramos Soares*, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, of Washington, DC, for Defendant United States. With her on the brief were *Brishailah Brown* and *Ian Andrew McInerney*, of Counsel, U.S. Department of Commerce, Office of Chief Counsel for Trade Enforcement & Compliance.

*Timothy C. Brightbill*, Wiley Rein, LLP, of Washington, DC, for Defendant-Intervenor Association of American School Paper Suppliers.  With him on the brief was *Maureen Elizabeth Thorson*.

**Vaden, Judge:**   Navneet Education Ltd. (Navneet or Plaintiff) filed this Motion for Judgment on the Agency Record challenging the Department of Commerce's (Commerce) Final Results of the 2019-2020 Administrative Review of the antidumping duty order on lined paper products from India, *i.e.*, notebook paper.  *See Final Results*, 87 Fed. Reg. 17,989 (Dep't of Com. Mar. 29, 2022) (Final Results).  In its Complaint, Navneet argues that Commerce (1) unlawfully deviated from its established practice in calculating the company's antidumping margin by manipulating its computer software to allow for the incorporation of non-essential, third-country data; (2) failed to notify Navneet of its intention to deviate from its established practice, making its actions arbitrary and an abuse of discretion; and (3) distorted the final calculation of Navneet's dumping margin.  *See* Pl.'s Compl. ¶¶ 22-24, ECF No. 6.  For the reasons set forth below, the Court **DENIES** Plaintiff's Motion.

## BACKGROUND

On September 28, 2006, Commerce published antidumping and countervailing duty orders on certain lined paper products from India (Orders).  *Certain Lined Paper Products from India*, 71 Fed. Reg. 56,949 (Dep't of Com. Sept. 28, 2006).  Commerce published notice of the initiation of an administrative review of those Orders for the period of September 2019 through August 2020 on October 20, 2020.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 68,840 (Dep't of Com. Oct. 20, 2020).  The agency selected Navneet as a mandatory respondent for the administrative review on January 13, 2021.  *Certain Lined Paper Products from India:  Preliminary Results of Antidumping Duty Administrative*

*Review*, 86 Fed. Reg. 54,426 (Dep't of Com. Oct. 1, 2021). As part of its investigation, Commerce sent Navneet a questionnaire comprised of sections A through D. Navneet submitted timely responses to each section, attaching the requested supporting documentation. Navneet Initial Questionnaire Section A Response, J.A. at 80,186–80,689, ECF No. 43; Navneet Initial Questionnaire Sections B-D Response, J.A. at 80,690–81,346, ECF No. 43.

Each section of the questionnaire focused on a different aspect of Navneet's business: Section A focused on Navneet's overall structure and accounting practices; Section B requested information about the company's home market sales; Section C echoed the questions asked in the prior section but focused on the company's sales in the United States; and Section D inquired about Navneet's costs of production. Navneet Initial Questionnaire Section A, B, C, D Responses, J.A. at 80,186, 80,695, 80,756, 80,816, ECF No. 43. As part of Section D, Commerce requested Navneet "provide one computer data file reporting the costs incurred for the merchandise under consideration. The file should contain per-unit cost information for the products sold in the U.S. market and the comparison market." Sec. D Resp. at D-38, J.A. at 80,853, ECF No. 43. Navneet complied, attaching a cost database listing all of the products it sold during the period of review, each identified by their unique control number or "CONNUM."[1] Sec. D. Resp. at Ex. D-25, J.A. at 81,317–320, ECF

---

[1] "CONNUM" is an acronym for "control number" and denotes a unique product based on relevant physical characteristics. To ensure that Commerce is comparing like products in the home and U.S. markets, it asks respondents to sort merchandise according to key differentiating categories with each number in the product's CONNUM corresponding to physical characteristic groupings particular to the merchandise under review. *Xi'An Metals & Minerals Imp. & Exp. Co. v. United States*, 520 F. Supp. 3d 1314, 1321 n.4 (CIT 2021).

No. 43.  Although Commerce requested physical characteristic information for each product that appeared in the cost database, the attachment submitted by Navneet did not include that information.  *Id.*  Of the 174 products listed in the cost database, 88 were sold in either the United States or home market and 86 were sold only in third-country markets, *i.e.*, not the United States or Navneet's home country of India. The database also included nine products that were sold, but not produced, during the period of review — three of which were also products sold only in third-country markets.  *Id.*  Although the questionnaire did not request any information about products sold only in third countries, Navneet later explained that it included the data as "part of [Navneet's] process to do a cost reconciliation[.]"  Oral Arg. Tr. at 7:24–25, ECF No. 48.  In the column of the database dedicated to the cost of production, Navneet entered surrogate costs — cost of production data for similar products that *were* produced during the period of review — for those nine items that had been sold but not produced during the period of review.  Sec. D. Resp. at Ex. D-25, J.A. at 81,317–20, ECF No. 43.

On September 27, 2021, Commerce published its Preliminary Results along with its Preliminary Calculation Analysis Memo.  *Certain Lined Paper Products from India: Preliminary Results of Antidumping Duty Administrative Review*, 86 Fed. Reg. 54,426 (Dep't of Com. Oct. 1, 2021); Preliminary Results of Antidumping Duty Administrative Review of Certain Lined Paper Products from India (2019–2020): Calculation Analysis of Sales and Cost of Production for Navneet Education Ltd., J.A. at 82,119, ECF No. 43 (Prelim. Calc. Memo).  In its calculation memo, the agency

explained that it "modified the home market … program to create variables for each of the eight physical characteristics in the control number (CONNUM) in the cost database" because those characteristics "are needed … in order for the margin analysis to find surrogate costs for CONNUMs that were sold but not produced during the POR."[2]   Prelim. Calc. Memo at 3, J.A. at 82,121, ECF No. 43.   In other words, the agency manually input the physical characteristic data that Navneet failed to provide with its cost database so that the full pool of products could be considered when selecting a surrogate for the sold-but-not-produced products.   Commerce was able to extract the information from the CONNUMs, which are a series of numbers representing the physical characteristics of the associated product.   It then selected "YES" in its computer program to the question of whether the cost data included the products' physical characteristics.   *Id.* at Att. 8 Lns. 8298–8301, J.A. at 82,147, ECF No. 43.   This allowed the program to consider each CONNUM in the cost database and select the product most physically similar to those products sold but not produced during the period of review.   The selected product would then serve as a surrogate for the orphan products' cost of production data.   Issues and Decision Memorandum (IDM) at 9, J.A. at 12,537, ECF No. 44.   Using all available data, Commerce's program calculated a preliminary dumping margin of 18.35%.   *Certain Lined Paper Products from India:   Preliminary Results of Antidumping Duty Administrative Review*, 86 Fed. Reg. 54,426 (Dep't of Com. Oct. 1, 2021).

---

[2] Period of Review

On November 8, 2021, Navneet filed a case brief in response to the agency's preliminary results.  Pl.'s Case Br., J.A. at 12,411, ECF No. 44.  Navneet made a series of claims, including an allegation that Commerce had incorporated an error into its computer program causing data from products sold only in third countries to be wrongfully included in the pool of potential surrogates.  *Id.* at 6, J.A. at 12,421.  Navneet traced this error to the toggle in the computer program inquiring whether the cost database included physical characteristics, which Commerce set to "YES" despite the company's not having provided that information in response to the relevant question.  *Id.* at 8, J.A. at 12,423.  Plaintiff claimed that this error led to a distortion in the final calculation and must be corrected in the Final Results.  *Id.* at 25–26, J.A. at 12,440–41.

Defendant-Intervenor, the Association of American School Paper Suppliers (the Association), disputed Navneet's claim that the inclusion of the third-country cost data was in error.  Def.-Int.'s Rebut. Br., J.A. at 82,636, ECF No. 43.  Instead, it argued that the agency's decision to use the third-country data as a surrogate for the missing cost of production figures was because those "third-country products more accurately capture the costs to produce those sold-but-not-produced home market CONNUMs than any other record information would."  *Id.* at 10, J.A. at 82,655.  This was consistent with "the overarching goal of the agency's calculations," which is to "produce[] accurate dumping margins[.]"  *Id.*  The Association argued that "[t]he agency cannot pretend that this data is not on the record simply because Navneet may now wish that it had never submitted it."  *Id.*

Commerce published its Final Results on March 29, 2022, assigning Navneet an increased dumping margin of 20.2%.  *Certain Lined Paper Products from India: Final Results of Antidumping Duty Administrative Review*, 87 Fed. Reg. 17,989 (Dep't of Com. Mar. 29, 2022).   In the Final Calculation Memo, the agency once again answered "YES" to the question asking whether there were "product physical characteristics in the cost database[.]"   Final Calc. Memo at Attach. 7 Lns. 8300–8303, J.A. at 82,709, ECF No. 43.   Commerce responded to Plaintiff's objections in the accompanying Issues and Decision Memorandum.  *See* IDM, J.A. at 12,529, ECF No. 44.   Commerce explained that use of the third-country data was an intentional decision designed to ensure the most comparable surrogate costs for the sold-but-not-produced merchandise.   Though it was true that Navneet had not provided the physical characteristics as part of its cost database, Commerce explained that it was able to "[extract] physical characteristics from the CONNUMs" Navneet did provide, which in turn allowed the agency to use "the most comprehensive pool of CONNUMs" from which to select a surrogate.  *Id.* at 9, J.A. at 12,537.   Critically, the agency also noted that by submitting the larger pool of cost data — including the unrequested figures for products sold only in third countries — Navneet had entered that information "on the record of this administrative review."   Commerce saw "no reason to exclude some or all of these cost records from the pool of potential surrogate costs."  *Id.*  Using the full database, it found "certain of these CONNUMs that were sold only in third countries to be the most similar products to the CONNUMs that were sold but not produced during the [period of review]" — making them the best surrogates

to use in calculating an accurate dumping margin.  Commerce also affirmed that "the cost components of these third-country CONNUMs … are within the range of the cost components of the CONNUMs that were sold in the U.S. and home markets." Therefore, using them "was not distortive[.]"  *Id.*

Plaintiff responded by filing suit in this Court.  Pl.'s Compl., ECF No. 6.  It filed its Motion for Judgment on the Agency Record and accompanying brief on November 3, 2022.  *See generally* Pl.'s Br., ECF No. 23.  Navneet challenged Commerce's Final Results, alleging that they were based on (1) "an error of fact and unannounced change in underlying principles" and (2) a change in Commerce's methodology carried out "without notice and a reasonable explanation" that (3) caused a distortive result.  *Id.* at 18–30.  Navneet's central challenge was to Commerce's handling of the small group of covered products that were sold but not produced during the period of review.  *Id.* at 16.  According to Navneet, the error stemmed from the computer program's YES/NO toggle for whether the company had provided physical characteristics with its cost database submission. *Id.* at 19.  When the toggle is set to "NO," the program restricts the pool of potential surrogates for goods that were sold but not produced during the period of review to those products sold in the U.S. or home markets.  When the toggle is set to "YES," the universe of potential surrogates is expanded to include products sold only in third countries.  *Id.* at 20.  Navneet contended that, because it did not provide the physical characteristics with its cost database, it had a reasonable expectation that Commerce would set the

toggle to "NO" and therefore not consider products sold only in third-country markets as potential surrogates. *Id.*

Navneet's second claim, regarding notice, stemmed from the same allegation. Namely, Navneet posited that Commerce had an established practice for how it performed the margin calculation on which parties such as Navneet have come to rely. *Id.* at 24–25. It claimed that Commerce's decision in another administrative review, *Ripe Olives from Spain*, establishes the agency's practice. Plaintiff quoted the *Ripe Olives* Issues and Decision Memo where the agency stated that third-country data was "appropriately excluded" from consideration. *Id.* at 21 (citing *Ripe Olives from Spain: Results of Antidumping Duty Administrative Review, 2018–2019*, 86 Fed. Reg. 35,068 (Dep't of Com. July 1, 2021) (*Ripe Olives from Spain 2018-2019*) and accompanying IDM at cmt. 9 (June 25, 2021)). Though recognizing that Commerce is empowered to change its methodology, Navneet argued that, where a method has become an "established practice," Commerce is required to provide "notice and an explanation" before enacting a change. Pl.'s Br. at 24–25, ECF No. 23. Commerce's failure to provide such notice made its Final Results in this review arbitrary and capricious and an abuse of the agency's discretion.

Navneet finally claimed that the calculation error had a distortive effect on the company's dumping margin. Navneet described in detail a variety of factors that made Commerce's surrogate selection distortive of the final calculation. *Id.* at 28–29. Plaintiff identified:

> The fact that the match was to a non-identical CONNUM (different physical characteristics); the length of time

> matching and number of U.S. sales matching to the home-
> market CONNUM, the eligibility of the matching home-
> market CONNUM only because of surrogate costs; the
> monthly margins for the same U.S. CONNUM in other
> months of the POR, the volume of U.S. sales affected
> relative to total U.S. sales; and the overall effect in light of
> Navneet's history.

*Id.* at 29.  These details did not appear in Navneet's brief to Commerce.  *See generally*
Pl.'s Case Br. 1–28, J.A. at 12,411–44, ECF No. 44.

On February 1, 2022, the Government filed its response brief.  Def.'s Br., ECF
No. 28.  Commerce insisted that its calculation in this case was consistent with its
"preference in assigning surrogate costs … to use the most similar product from a
pool of all available CONNUMs with cost information on the record as long as it does
not lead to distortions."  *Id.* at 16.  The agency rejected Navneet's claim that it had
violated any established practice and that the agency "impermissibly altered [the
computer] program to include Navneet's third country CONNUM costs."  *Id.* at 17.
Commerce explained that extrapolating the physical characteristics from available
data and inputting them into the computer program is not a deviation from an
"established practice" but rather is "necessitated because respondents often fail to
properly report product-characteristic information."  *Id.* at 20.  The agency cited two
decision memorandums from other reviews to support its practice.  *Id.* at 19–20; *see
also Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of
Korea*, 70 Fed. Reg. 12,443 (Dep't of Com. Mar. 14, 2005) (*CORE from Korea 2002-
2003*) and accompanying IDM at cmt. 14; *Stainless Steel Sheet and Strip in Coils from
Mexico*, 76 Fed. Reg. 2,332 (Dep't of Com. Jan. 13, 2011) (*SSSSC from Mexico*) and

accompanying IDM at cmt. 1.  Commerce asserted that those decisions confirm that

its priority "in assigning surrogate costs is to select the most similar product from a

pool of all available CONNUMs with cost information on the record[.]"  Def. Br. at 18,

ECF No. 28.

The Government also argued that Navneet forfeited its distortion claim by

failing to exhaust its administrative remedies.  *Id.* at 26.  Although Navneet's claim

that Commerce's calculation had a distortive effect on the company's dumping margin

appeared in its case brief to the agency, "Navneet [raised] nothing more than

unspecific and vague arguments concerning distortion."  *Id.* at 27.  Meanwhile, in its

brief to this Court, Navneet greatly expanded on that argument, citing "highly

technical and specific" factors that caused the alleged distortion.  *Id.*  Commerce

argued that the bare recitation of a conclusory claim regarding distortion before the

agency was not enough to have preserved Navneet's current argument.  *Id.* at 26–28.

Navneet filed its reply brief on March 17, 2023.  Pl.'s Reply Br., ECF No. 31.

It argued that the existence of the toggle inquiring about the presence of physical

characteristic data supported its reliance claim.  *See id.* at 4 ("The YES/NO toggle

makes clear that reporting product physical characteristics in the cost database … is

optional and that Commerce expects to use whatever is reported.  There is no other

explanation for the existence of the YES/NO toggle.").  Navneet also once again

directed the Court to Commerce's decision in *Ripe Olives from Spain*.  *Id.*

The Association filed its brief on April 4, 2023.  Def.-Int.'s Br., ECF No. 37.  The

Association fully adopted Commerce's position and added an explanation of how the

agency was able to extract the physical characteristics data. *Id.* at 1.  Because Plaintiff's cost database included the CONNUM for each product, and CONNUMs are a series of numbers that correspond to those physical characteristics, Commerce simply used those numbers to reverse engineer the relevant physical characteristic data. *Id.* at 5–6.  By incorporating that data, it was able to identify "the products most physically similar to the sold-but-not-produced home-market CONNUMs for which costs were not available on the record" and calculate "an accurate assessment of the cost to produce" those goods. *Id.* at 9.  To the Association, Navneet's position that a company's failure to provide requested information should require "the agency to both ignore record evidence and to make adjustments favorable to the respondent" was an absurd interpretation of the law. *Id.* at 8.  Instead, the Association asserted that Commerce is well within the bounds of its discretion when it makes a reasonable methodological decision that achieves its mandate. *Id.* at 7.

On July 17, 2023, the Government submitted a letter requesting the Court take judicial notice of the cover page of Commerce's website to which Plaintiff cited multiple times in its brief.  Def.'s Ltr. to Court, ECF No. 45.  It requested that the Court take judicial notice of the statement made on Commerce's website regarding its use of the Antidumping Margin Calculation Program:

> On this page you will find the generic antidumping (AD) margin calculation programs. These programs are the starting point of our AD calculations. For a particular company in a proceeding, a case analyst will modify the boilerplate code as required for their case.

*Id.* at 2–3; *see also* Antidumping Margin Calculation Programs, https://access.trade.gov/resources/sas/programs/amcp.html, last visited December 29, 2023. According to the Government, the disclaimer language precluded any reliance interests Navneet might claim. Oral Arg. Tr. at 58:13–25, ECF No. 48; *see also* Def.'s Ltr. to Court, ECF No. 45.

The Court held oral argument on July 20, 2023. ECF No. 46. The Court granted Commerce's unopposed request to take judicial notice of the cover page of Commerce's website as well as any information contained on the same website and cited in Plaintiff's brief. Oral Arg. Tr. at 6:20–21, ECF No. 48. The Court asked what Navneet felt the disclaimer regarding Commerce's intention to "modify the boilerplate code as required for [each] case" meant for its reliance argument. *Id.* at 58:5–59:1. Counsel responded that, though the disclaimer provides reasonable notice that Commerce will make certain adaptations to their program, the agency cannot "change the record in the case," which counsel contended "they did here." *Id.* at 59:8–13.

Plaintiff's counsel argued that Commerce's calculation and the manner in which it reached its conclusion were arbitrary because they violated what Navneet had reasonably relied on: "predictable treatment[.]" Counsel observed that "Navneet's been in nine prior reviews where it reported the information in the same way" and that, in those prior reviews, the company "did not report physical characteristics" and received dumping "margins from zero to less than three percent[.]" *Id.* at 31:14–20. The Court noted, however, that Plaintiff failed to enter

those prior administrative reviews onto the record or to raise this prior treatment argument in its briefs to the Court. *Id.* at 32:5–12. Instead, Navneet focused on the way Commerce operated its computer program. *See* Pl's Br. at 18–20, ECF No. 23; Pl.'s Reply Br. at 2, ECF No. 31.

The Court next sought to determine whether Navneet had forfeited its distortion claim. Plaintiff's counsel insisted that the single paragraph proffering a general distortion claim in Navneet's case brief to the agency was sufficient to put Commerce on notice of that argument because "the bar is low" for what a Plaintiff must raise at the administrative level in order to satisfy the exhaustion doctrine. Oral Arg. Tr. at 68:6–14, ECF No. 48. Navneet further argued that Commerce's addressing of the distortion argument in its Issues and Decision Memorandum proved that Commerce was sufficiently on notice of the issue. *Id.* at 69:8–16. Commerce responded that Federal Circuit precedent "explains that perfunctory arguments that are not developed are simply not sufficient to exhaust administrative remedies." *Id.* at 72:5–10. Plaintiffs "have a responsibility to raise these issues in developed arguments, as the Federal Circuit has explained, not in general assertions of distortion." *Id*. at 73:14–17. Commerce conceded, however, that it had not addressed the merits of Navneet's distortion claim in its brief before the Court. *Id.* at 74:3–7 (when asked by the Court whether Commerce had included a substantive argument against distortion in its brief, responding "No, Your Honor."). Commerce suggested that, should the Court reach the merits, it may still rule on the question as a matter of law. *Id.* at 74:12–16. The parties agreed that there is no federal statute

or regulation that outlines the criteria for a "distortion" test or claim. Instead, there exists a thirty-year-old Policy Bulletin in which the word "distortion" is used twice in a discussion about "when to make and how to quantify adjustments for differences in merchandise[.]" *Id.* at 70:6–19; Int. Trade Admin., Policy Bull. 92.2, *Differences in Merchandise; 20% Rule* (Jul. 29, 1992).

With the positions of the parties clarified, the Court now turns to the merits of their contentions.

### JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over Plaintiff's challenge to the Final Results under 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting final determinations in antidumping reviews. The Court must sustain Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with the law." 19 U.S.C. § 1516a(b)(1)(B)(i). Where they fail to meet that standard, the Court must "hold unlawful any determination, finding, or conclusion found." *Id.* As this Court has articulated, "the question is not whether the Court would have reached the same decision on the same record[;] rather, it is whether the administrative record as a whole permits Commerce's conclusion." *See New American Keg v. United States*, No. 20–00008, 2021 WL 1206153, at *6 (CIT Mar. 23, 2021). Furthermore, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported

by substantial evidence." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927,

933 (Fed. Cir. 1984).

In reviewing agency determinations, findings, or conclusions for substantial

evidence, the Court assesses whether the agency action is reasonable given the record

as a whole. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350–51 (Fed. Cir.

2006); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951) ("The

substantiality of evidence must take into account whatever in the record fairly

detracts from its weight."). The Federal Circuit has described "substantial evidence"

as "such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." *DuPont Teijin Films USA v. United States*, 407 F.3d 1211, 1215 (Fed.

Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## DISCUSSION

### I.    SUMMARY

Commerce's mandate is to calculate the most accurate dumping margin

possible. *Taian Ziyang Food Co. v. United States*, 37 CIT 947, 956 (2013); *Louyang

Bearing Corp. v. United States*, 28 CIT 733, 762 (2004). The data it relies on to

achieve this is the administrative record, which is comprised of the information that

interested parties submit in response to the agency's questionnaires. *QVD Food Co.

Ltd. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011); *Macao Commer. & Indus.

Spring Mattress Mfr. v. United States*, 437 F. Supp. 3d 1324, 1332 (CIT 2020). The

Court is often called on to assess whether Commerce was sufficiently accurate in its

calculations or whether it employed a permissible methodology — challenges to the

accuracy of Commerce's Final Results. In this case, however, it is undisputed that Commerce analyzed the entire record, selected the most accurate data submitted by Plaintiff, and used that information to calculate an accurate dumping margin. Oral Arg. Tr. at 22:13–14, ECF No. 48. Plaintiff instead asks the Court to restrict Commerce from using data Navneet voluntarily submitted in order to yield a less accurate margin but one that is more favorable to Navneet. The Court declines to do so.

Navneet makes two principal arguments for why it believes Commerce's Final Results must be remanded, neither of which are availing. First, Navneet attempts to frame Commerce's methodology as a simple computer error, whereby the agency selected "YES" rather than "NO" on its program, leading to an algorithmic mistake. Pl.'s Br. at 18–19, ECF No. 23. However, as the agency explained, the selection of "YES" was not an error but instead reflected that Commerce was able to find the information it needed from elsewhere in the record and input it into the computer program. IDM at 9, J.A. at 12,537, ECF No. 44; Oral Arg. Tr. at 88:23–89:3, ECF No. 48.

Second, Navneet claims that Commerce's use of voluntarily submitted record information constituted a change in methodology and required the agency to notify the company of its intentions before using the data. Pl.'s Br. at 24–25, ECF No. 23. Instead of pointing to its own prior administrative reviews and Commerce's past treatment of its submissions, Navneet builds its reliance argument on a general claim regarding the agency's methodology. Oral Arg. Tr. at 31:24–32:15, ECF No. 48. The

case on which Navneet relies, however, fails to support its claim.  Because Commerce used record information to select the best surrogate data and to calculate the most accurate dumping margin, the Court declines to disrupt the agency's findings.

## II.    SUBSTANTIVE BACKGROUND

When conducting administrative reviews of antidumping orders, Commerce compares the value of identical products being sold in the U.S. (export price) and the company's home market (normal value).  If no identical products exist, Commerce instead compares the most similar products.  Where that comparison reveals that the normal value of the product exceeds its export price, the amount by which the figures differ is the "dumping margin."  19 U.S.C. § 1677(35)(A); *see also* 19 C.F.R. § 351.401(a).

To conduct this comparison, Commerce must first select products sold in the U.S. and the home market to compare.  Those products ideally will be identical or at least only differ in commercially non-significant ways.  However, in the event that the products are not identical and the physical differences between those products have "an effect on prices[,]" Commerce must "make a reasonable allowance for such differences." 19 C.F.R. § 351.411.  Federal regulations require the agency to "consider only differences in variable costs associated with the physical differences."  *Id.*  Those regulations do not prescribe any particular method for Commerce to identify the foreign like product.  Courts have interpreted this as a delegation of authority to the agency to choose how to carry out its mandate. *New World Pasta Co. v. United States*, 28 CIT 290, 305–06 (2004) (citing *Pesquera Mares Australes, Ltda. v. United States*,

266 F.3d 1372, 1384 (Fed. Cir. 2001) and *Koyo Seiko Co. v. United States*, 66 F.3d 1204, 1209 (Fed. Cir. 1995)). In exercise of that authority, Commerce has decided to select the most similar product being sold in the home market based on "a hierarchy of commercially significant characteristics suitable to each class or kind of merchandise." *Fagersta Stainless AB v. United States*, 32 CIT 889, 893 (2008).

When a non-identical foreign like product must be used as a comparator, Commerce adjusts the normal value to account for the differences in cost that are attributable to the commercially significant differences in physical characteristics. *Id.* at 899. This is referred to as the "difference in merchandise" adjustment or "DIFMER." *Id.* In order to ensure that the products are similar enough to offer an accurate comparison, the agency employs a "20% guideline," which holds that, where "the variable cost difference exceeds 20%, [Commerce] consider[s] that the probable differences in values of the items to be compared [are] so large that they cannot reasonably be compared." Int. Trade Admin., Policy Bull. 92.2, *Differences in Merchandise; 20% Rule* (Jul. 29, 1992). The question of whether the cost difference between products exceeds 20% is referred to as the "DIFMER test."

All the product data — costs, prices, and physical characteristics — that Commerce uses in performing its calculations come from the parties. The agency gathers the information through a series of questionnaires sent to respondent companies along with requests for supporting documentation. Together, the companies' submissions constitute the record that Commerce uses to conduct its analysis and determine the dumping margin. Commerce's must "determine

antidumping margins as accurately as possible," and it must use its discretion in choosing a methodology to achieve that purpose. *Taian Ziyang Food Co.*, 37 CIT at 956 (internal quotations omitted).

### III.  COMMERCE'S ALLEGED PROGRAMMING ERROR

Navneet argues that, in calculating the company's dumping margin, Commerce departed from its established practice and incorporated a factual error into its computer program. Pl.'s Br. at 18, ECF No. 23. Plaintiff claims the agency has established, through its publicly available margin calculation program, that products sold only in third countries will be excluded from the universe of potential surrogates if the respondent company does not provide physical characteristic information with its cost data. *Id.* Navneet says it "conform[ed] its pricing behavior to the methodologies in Commerce's standard margin-calculation programs," but the agency changed its methodology without notice and manually input data that it was able to extract so that its program could include third-country products as potential surrogates for the differences-in-merchandise test. *Id.* at 17–18. By modifying how it used its computer program and considering information Navneet did not intend to be part of the calculation, Navneet asserts that Commerce's actions lack substantial evidentiary support. *Id.* at 18.

In response, the Government asserts that Navneet's allegation is based on a misstatement of Commerce's practice. Rather than adopting any rule regulating which potential surrogate products contained within the record may be considered, the Government argues that Commerce's practice is to "use the most similar product

from a pool of all available CONNUMs with cost information on the record as long as it does not lead to distortions." Def.'s Resp. at 16, ECF No. 28. The Government cites Commerce's Issues and Decision Memorandums in two other recent investigations — *CORE from Korea 2002-2003* and *Certain Frozen Warmwater Shrimp from Thailand* — to support its position. In both of those cases, Commerce explained its practice as "choos[ing] the most similar product produced during the period of review" without any restriction based on "the market in which the product was subsequently sold." *Id.* at 13–14 (quoting *CORE from Korea 2002-2003*, 87 Fed. Reg. 20,815 and accompanying IDM at cmt. 14 and *Certain Frozen Warmwater Shrimp from Thailand*, 82 Fed. Reg. 30,836 (*Shrimp from Thailand*) and accompanying IDM at cmt. 3.).

Commerce addressed Navneet's objections in its Issues and Decision Memorandum and explained its decision to use the third-country data. Cost of production data is necessarily missing for products that were sold but not produced during the period of review, as Commerce strictly limits its analysis to actions that occurred during the review period. "[B]ecause the cost of production information is unavailable, [Commerce] assign[s] costs to those products by selecting a similar product, based on the hierarchy of product characteristics established in the CONNUM[.]" IDM at 8, J.A. at 12,536, ECF No. 44. Its "preference in assigning surrogate costs is to select the most similar product from a pool of all available CONNUMS with cost information on the record[.]" *Id.*; *see also* 19 C.F.R. § 351.408(c)(3). Although it is undisputed that Navneet did not provide the agency

with the physical characteristics of the products as part of its cost database, it is also undisputed that Plaintiff did place the control numbers in question on the record as part of its submissions to Commerce.  IDM at 9, J.A. at 12,537, ECF No. 44.  Because control numbers are merely numerical stand-ins for a product's physical characteristics, it did not take much for Commerce to compare the products' characteristics to those of the products needing comparators.

The Plaintiff bears the burden to build the record.  *QVD Food Co. Ltd.*, 658 F.3d at 1324; *Macao Commer. & Indus. Spring Mattress Mfr.*, 437 F. Supp. 3d at 1332.  Here, Navneet asks the Court to order Commerce to ignore information it voluntarily put on the record.  This the Court will not do.  Both the Court and the agency are under a duty to consider the record as a whole.  *Compare* 19 U.S.C. §§ 1516a(b)(1)-(2) (limiting review to the record before the agency and establishing what constitutes that record), *and Nippon Steel Corp.*, 458 F.3d at 1350–51 (requiring review of the entire record), *with Cheng Shin Rubber Ind. Co. v. United States*, No. 21-00398, 2023 Ct. Intl. Trade LEXIS 19, at *29 (2023) (finding that it would be legal error for Commerce to "refuse to consider evidence bearing on the issue before it") (citation, alteration, and internal quotation marks omitted).

No party disputes the accuracy of the physical characteristic data that Commerce used.  Nor does any party dispute that the comparator Commerce chose is the product whose physical characteristics are closest to the products that were sold but not manufactured during the period of review.  Oral Arg. Tr. at 22:13–14, ECF No. 48 ("[W]e don't necessarily dispute that that CONNUM is the closest match.").

What Plaintiff asks of the Court therefore is to order the Commerce Department to disregard the best available comparator data on the record in favor of using another, less similar product. That, in turn, will result in a less accurate dumping margin but one that happens to be more favorable to Navneet. The request answers itself. *Cf. Zhejiang Native Produce & Animal By-Products Imp. & Exp. Corp. v. United States*, 27 CIT 1827, 1853 (2007) ("It is well-established that Commerce enjoys wide discretion in valuing the factors of production …. However, despite the broad latitude afforded Commerce and its substantial discretion in choosing the information it relies upon, the agency must act in a manner consistent with the underlying objective of 19 U.S.C. § 1677b(c) — to obtain the most accurate dumping margins possible.") (internal quotation marks and citations omitted). Because Commerce relied on record information whose accuracy is undisputed in selecting among the proper comparators to determine the cost of production, Commerce did not commit a factual error in answering "YES" to the question of whether product characteristic information was provided.

## IV. FAILURE TO PROVIDE NOTICE

The crux of Navneet's objection is not really that Commerce made a factual error but rather that it changed its standard operating procedure without notice in a way that harmed Navneet. Plaintiff argues that, before considering cost information for products sold only in third countries, Commerce was required to give the company notice of its intention. Pl.'s Br. at 24–25, ECF No. 23. Navneet points to its thirteen prior administrative reviews with dumping margins under three percent as evidence

of its "extraordinarily long track record of conforming its pricing behavior to the standards of U.S. trade law." *Id.* at 26.  Although Navneet failed to enter those administrative records from prior reviews onto the record in this case, the company attempts to buttress its established practice argument by citing to the administrative review of a different order, where Commerce stated that third-country data was "appropriately excluded" from consideration.  *Id.* at 24–25; *see also Ripe Olives from Spain 2018–2019*, 86 Fed. Reg. 35,068 and accompanying IDM at cmt. 9.  To Navneet, the 22% dumping margin here is all the proof needed to show that it was caught unaware by a change in methodology.

Commerce responds by reiterating that its inclusion of third-country products "constitutes neither a change in methodology nor a departure from established practice."  Def.'s Br. at 22, ECF No. 28.  Citing to numerous opinions issued by the agency in other investigations, the Government explains that "Commerce's practice is to consider all CONNUMs on the record, including third-country CONNUMs" in its effort to select "the most similar product[.]"  *Id.* at 22–23; *see also CORE from Korea 2002-2003*, 87 Fed. Reg. 20,815 and accompanying IDM at cmt. 14; *Shrimp from Thailand*, 82 Fed. Reg. 30,836 and accompanying IDM at cmt. 3; *SSSSC from Mexico*, 76 Fed. Reg. 2,332 and accompanying IDM at cmt. 1.

In the alternative, Commerce argues that it satisfied any notice requirement by providing Navneet "with notice and the opportunity to comment before the final determination [was] made."  Def.'s Br. at 23, ECF No. 28 (citing *Koyo Seiko Co., Ltd. v. United States*, 31 CIT 1512, 1520 (2007) and *SeAH Steel Corp. v. United States*, 34

CIT 605, 618 (2010)).  Navneet availed itself of the opportunity to comment, and Commerce provided adequate consideration and explanation of its decision in its Issues and Decision Memorandum.  *Compare* Pl.'s Case Br. at 3, J.A. at 12,418, ECF No. 44 (raising the alleged methodological error for Commerce's consideration before publication of the Final Results), *with* IDM at cmt. 1, J.A. at 12,533–37 (Commerce's response).  Thus, according to the Government, Navneet received all the notice and process to which it was entitled.

First, it is important to note the state of the record in this case, as the Court is constrained by law to review only that record.  19 U.S.C. § 1516a(b)(2); *see also Swiff-Train Co. v. United States*, 793 F.3d 1355, 1359 (Fed. Cir. 2015) ("This court's review is limited to the record before the Commission in the particular proceeding at issue and includes all evidence that supports and detracts from the Commission's conclusion.") (citing *Sango Int'l L.P. v. United States*, 567 F.3d 1356, 1362 (Fed. Cir. 2009)).  Although Navneet points to the results of its prior administrative reviews, it failed to put any of those reviews on the record of this case.  Pl's Case Br. at Ex. 1, J.A. at 12,444, ECF No. 44 (exhibit listing rates from prior administrative reviews but containing no other information); *see also* Pl.'s Br. at 26, ECF No. 23.  The Court is therefore unable to determine if the third-country product information Navneet provided in this case is the same as that it alleges it provided — and Commerce ignored — in those prior reviews.  Further, before the agency, Navneet focused on the alleged factual error Commerce committed by telling its computer program that the necessary product characteristic information was on the record.   Commerce's

practices regarding Navneet's prior reviews were left unasserted. *See* Pl.'s Case Br. at 3–9, J.A. at 12,418–12,424, ECF No. 44. Thus, the Court may not address arguments regarding any expectations Commerce may have established with Navneet concerning what record evidence it would and would not consider. *Qingdao Sea-Line Trading Co., Ltd. v. United States*, 36 CIT 451, 470 (2012) ("[W]hen a party fails to make an argument in proceedings below, the argument is [forfeited].") (internal citations omitted).

Second, Navneet did preserve its arguments regarding the application of the *Ripe Olives* decision and whether that precedent established a policy on which Navneet reasonably relied. Navneet cites to a specific phrase — that data from products sold only in third countries was "appropriately excluded" — found in comment nine of Commerce's Issues and Decision Memorandum to argue that the agency's policy in selecting surrogate data is to exclude third-country product information. *Ripe Olives from Spain 2018–2019*, 86 Fed. Reg. 35,068 and accompanying IDM at cmt. 9. However, comment nine is not applicable. It addresses petitioner's claim that the respondent company failed to provide third-country product information in its cost database, constituting non-cooperation warranting the application of an adverse inference. *Id.* Commerce's discussion of the inclusion or exclusion of third-country data in *Ripe Olives* is thus about whether the *omission* required drawing an adverse inference, not about whether an agency will *ignore* information a party voluntarily *submitted*.

Conversely, Commerce's citation does speak directly to the question at hand. In *Shrimp from Thailand*, comment three of the Issues and Decision Memorandum addresses the respondent's concern that Commerce used its entire cost database — including information for third-country products — rather than a separate version of the database that excluded third-country products. *Shrimp from Thailand*, 82 Fed. Reg. 30,836 and accompanying IDM at cmt. 3. The company, like Navneet here, argued that Commerce "should consider … only the costs for products … sold in the home market or United States[.]" Commerce declined to do so and instead used the more comprehensive database, explaining that "it is the Department's practice in assigning surrogate costs … to use the most similar product available." *Id.* The weight of past practice cited supports Commerce.

Third, Navneet was not without notice about Commerce's intentions. Commerce's Preliminary Results used the same surrogate selection process as that ultimately adopted in the Final Results and explained in the Issues and Decision Memorandum. Navneet was able to lodge any objections it wished to Commerce's method of selecting the most similar product for cost comparison. It took advantage of the opportunity, and Commerce adequately responded to its concerns. *See supra* § III. Navneet's reliance on the publicly available computer programming language was unreasonable. Next to that language was a disclaimer that explained the provided language was merely a "starting point" and that "a case analyst will modify the boilerplate code as required for their case." Antidumping Margin Calculation Programs, https://access.trade.gov/resources/sas/programs/amcp.html, last visited

December 29, 2023. Thus, the only thing Navneet could rely on regarding the computer programming language was that it was liable to change on a case-by-case basis.

That leaves the question of whether Commerce should have provided Navneet with notice of its intention to use third-country data sooner than when it did, *i.e.*, before Navneet voluntarily provided the data. Although agencies are empowered to employ new or altered methods, they must provide adequate notice to interested parties before doing so. "[P]rinciples of fairness prevent Commerce from changing its methodology" at too late a stage. *Shikoku Chems. Corp. v. United States*, 16 CIT 382, 388 (1992). To adjudicate such a claim, the Court would need to review evidence regarding what information Navneet placed on the record in prior administrative reviews and compare that to what evidence Commerce used here in its differences-in-merchandise analysis. Navneet unfortunately did not place any such evidence on the record, and the one decision it did place on the record — *Ripe Olives* — does not support its position. Because the record evidence does not reflect that Commerce changed its practice of using the best available data to find the closest comparator for its cost calculations and because the agency notified Plaintiff of what data it intended to use and considered Plaintiff's objections to it, the Court must **SUSTAIN** Commerce's determination.

## V.    DISTORTION

28 U.S.C. § 2637(d) instructs that "in any civil action … the Court of International Trade shall, where appropriate, require the exhaustion of

administrative remedies."  In the case of administrative reviews, parties challenging the final results of an investigation "must" submit case briefs to the agency that "present all arguments that continue in the submitter's view to be relevant to [Commerce's] final determination or final results."  19 C.F.R. § 351.309(c)(2).  The purpose of this requirement is threefold.  First, the rule "recognizes that an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Ellwood City Forge Co. v. United States*, 582 F. Supp. 3d 1259, 1272 (CIT 2022) (internal quotations omitted).  Second, exhaustion "promotes judicial efficiency because it requires parties to make arguments first before the agency that the agency may then moot before they reach court." *Id.*  Third, where the issue is not resolved at the administrative level, "exhaustion still produces a useful record for subsequent judicial consideration, especially in a complex or technical factual context." *Id.* (internal quotations omitted).

In its case brief before the agency, Navneet claimed that the method by which the agency calculated the company's dumping margin had a distortive effect.  Pl.'s Case Br. at 25–26, J.A. at 12,440–441, ECF No. 44.  In support of that allegation, Navneet offered only a single paragraph consisting of three sentences with no mention of the specific factors it believed were at the root of the alleged distortion. *Id.*  Navneet's distortion argument before the agency is reproduced in full below:

> As discussed above, Navneet's margin is de minimis when the cost database used in assigning surrogate costs to sold-not-produced products is limited to those control numbers also found in the U.S. or Comparison Market sales

> database. Because the Department did not limit the cost
> database in this review, the entire cost database was used
> for these purposes, which resulted in a significant margin
> for Navneet (18.3 percent). Very clearly, the Department's
> inadvertent methodology led to distorted results.

*Id.* The Issues and Decision Memorandum considered whether Commerce's choice of

a third-country product as the appropriate cost comparator had a distortive effect.

IDM at 5–9, J.A. at 12,533–37, ECF No. 44. Commerce explained its decision to

continue to include the third-country product data, as it:

> was not distortive because the cost components of these
> third-country CONNUMs (direct materials, labor, fixed
> and variable overhead, packing, *etc.*) are within the range
> of the cost components of the CONNUMS that were sold in
> the U.S. and home markets, which indicates that the third-
> country CONNUMs have a similar cost structure as the
> CONNUMs sold in the U.S. and home markets.

*Id.* at 9, J.A. at 12,537. Commerce's explanation reflects the position it voiced later

at oral argument that whether a method is distortive is a question of how similar a

surrogate product is in commercially significant ways. Oral Arg. Tr. at 70:9, 71:1–5,

ECF No. 48.

In its brief to this Court, Navneet again raised the issue of distortion — this

time with tremendous specificity, spanning several pages, and describing precisely

what it believed caused the distortion. Pl.'s Br. at 28–30, ECF No. 23 (listing

"different physical characteristics … the length of time matching and number of U.S.

sales matching to the home market … the eligibility of the matching home market-

CONNUM … the monthly margins for the same U.S. CONNUM in other months of

the POR, the volume of U.S. sales affected relative to total U.S. sales" as some of the

causes of the alleged distortion). None of the information contained in Navneet's court brief was unknown at the time it submitted its case brief to the agency. Oral Arg. Tr. at 73:6–9, ECF No. 48.

The Government asserts that the "unspecific and vague arguments" that appeared in Navneet's case brief were not enough to preserve the claim, which now appears with "highly technical and specific" arguments raised for the first time before the Court. Def.'s Br. at 27, ECF No. 28. According to Commerce, Navneet's omission deprived the agency of the "opportunity to address those arguments on the record" and "impeded judicial review because this Court has no record of the agency's consideration and resolution of these issues." *Id.* at 28. Although Commerce provides a lengthy discussion of why it believes Navneet forfeited its distortion claim, it fails to offer any substantive response in the alternative. At oral argument, Commerce conceded that it focused its brief exclusively on its forfeiture argument but maintained that, should the Court find that the issue has not been forfeited, the Court could still deny Navneet's claim as a matter of law. Oral Arg. Tr. at 74:3–16, ECF No. 48.

As noted above, there is no statutory or regulatory test for "distortion." The concept rests on the thirty-year-old Policy Bulletin, which is itself lacking in specifics regarding the analysis to be undertaken. Int. Trade Admin., Policy Bull. 92.2, *Differences in Merchandise; 20% Rule* (Jul. 29, 1992). At oral argument, it became clear that the parties disagree about what questions the agency must ask in its assessment of whether its methodology has been "distortive" and at what stage those

questions should be asked.  Navneet argues that Commerce is required to consider

whether its methodology has been distortive both "before and then after" it conducts

its calculations, considering both the data it puts into the equation and the resulting

figure to see if it "looks very aberrational."  Oral Arg. Tr. at 63:16–64:6, ECF No. 48.

Meanwhile, Commerce posits that the differences-in-merchandise test is its tool for

determining whether its choice of comparators has been distortive.  For support,

Commerce referred the Court to its Policy Bulletin 92.2, which discuses "distortion"

in the context of the DIFMER test.  *Id.* at 70:6–19;[3] *see also* Int. Trade Admin., Policy

Bull. 92.2, *Differences in Merchandise; 20% Rule* (Jul. 29, 1992).  This, according to

Commerce, illustrates that its mandate to select a methodology that is not distortive

and the DIFMER test are "one and the same."  Oral Arg. Tr. at 70:9, 71:1–5, ECF No.

48.  If the cost differences do not breach the twenty percent threshold, there is no

distortion.  Int. Trade Admin., Policy Bull. 92.2, *Differences in Merchandise; 20% Rule*

(Jul. 29, 1992).

Before the Court can answer this question, it must first ask if Navneet has

properly preserved its objection.  There is a fine line between a situation in which

"plaintiff's brief statement of the argument is sufficient … [to] alert the agency to the

argument with reasonable clarity and avails the agency with an opportunity to

address it" and one in which plaintiff attempts to "circumvent the requirements of

the doctrine of exhaustion by merely mentioning a broad issue without raising a

---

[3] In the cited portion of the transcript, counsel for the Government mistakenly referred to
Policy Bulletin 19.2 but later, at Oral Arg. Tr. at 71:10–14, ECF No. 48, corrected her error,
explaining that she meant Policy Bulletin 92.2.

particular argument[.]" *Luoyang Bearing*, 28 CIT at 761. Navneet falls on the wrong side of the line.

Though Navneet is correct that a Plaintiff need not have presented its argument "in exactly the same words before the Agency" in order to preserve its claim, the standard for exhaustion requires more than vague, conclusory statements. Oral Arg. Tr. at 68:23–69:2, ECF No. 48. Three sentences of vague allegations of distortion represent a far different claim from two full pages of argument laying out with specificity multiple alleged failures. As the Federal Circuit has explained, when a party fails to raise a particular argument before the agency, that argument is forfeited. It would be "unjust to the [agency] and wasteful of public resources to allow [Plaintiff] to belatedly raise the argument" for the first time before the Court. *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990) (rejecting a party's attempt to raise an argument for the first time because "it is simply another angle to an *issue* which it did raise") (emphasis in original).

What Navneet put Commerce on notice of was its belief that the choice of a third-country product as a cost comparator had some unspecified distortive effect on the final calculation of Navneet's dumping margin. Pl.'s Case Br. at 25–26, J.A. at 12,440–441, ECF No. 44. Commerce adequately addressed *that* concern in its decision and provided sufficient support for its continued use of the selected comparator product — including an express finding that the choice was not distortive. IDM at 5–9, J.A. at 12,533–37, ECF No. 44. Whether intentional or not, Navneet launched a surprise attack against the agency by turning a three-sentence argument

before Commerce into a multi-page attack in court.  Given the lack of statutory or regulatory standards, it would be vital to have Commerce's explanation of its policy, past practice, and response to Navneet's now very specific objections.  *See Ellwood City*, 582 F. Supp. 3d at 1282 (noting the exhaustion doctrine promotes the creation of a record before the agency suitable for judicial review).   No explanation of Commerce's position exists in the record because there was no such argument to which to respond.  Congress does not "hide elephants in mouseholes."  *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).  Litigants should not either.  An undeveloped claim made before an agency — or a court — is forfeited.  *Qingdao Sea-Line Trading*, 36 CIT at 470–71.  Commerce responded to Navneet's three sentence argument with an appropriate answer supported by substantial evidence.  Because vague, unsupported allegations do not serve to preserve a later hyper-specific, technical claim, Navneet has forfeited its remaining arguments by failing to exhaust its administrative remedies.

## CONCLUSION

Navneet's objections have morphed between the agency and the Court.  Before the agency, Navneet focused on whether Commerce correctly programed its computer language and the application of certain discrete prior administrative reviews to the facts of Navneet's case.  Though still pressing those claims, Navneet now wishes to pivot and aggressively press claims that Commerce violated settled expectations created in Navneet's past administrative reviews and that Commerce's choice of comparator was distortive.  The problem is that Navneet did not enter those prior

reviews onto the record so that the Court may not weigh the validity of its invocation of past practice.  Nor may the Court allow Navneet to take an undeveloped, three-sentence argument before the agency and turn it into the main event before the Court. Against the objections Navneet did raise, the Court **SUSTAINS** Commerce's decision as supported by substantial evidence.  Plaintiff's Motion for Judgment on the Agency Record is therefore **DENIED**.

                     /s/ Stephen Alexander Vaden
                     Stephen Alexander Vaden, Judge

Dated: December 29, 2023
        New York, New York